Hey, please the court, my name is Benjamin Stein, and I represent the petitioner in this immigration case challenging the constitutionality of the word encouraging, found in the provision of the INA referred to as the alien smuggling statute. Can I just ask a question, are you not going to argue with the Castro-Tome issue? I think the Castro-Tome issue, I understand the doctrine of constitutional avoidance, but because the decision in this case to Bradman Close was premised on the alien smuggling, on the smuggling ground, I think that the court can't avoid first acknowledging or acknowledging the constitutional challenge. It's a very strange posture, because we have no idea what he did in fact, and we don't know whether what he did could have come under the other phrases in the same statute, it's extremely peculiar. He simply says, I encourage my son, and we don't know whether he sent him money, or took him across the border, or paid the coyote, or just said, son, I'd like you to come here. We have no idea. Exactly, and that illustrates, so he admitted to encouraging, which we believe that that just could be speech alone, and we believe for that reason, the encouraging provision of the statute is spatially overbroad, and thus unconstitutional. Well, I mean, maybe it could or couldn't under the statute, but there is a historical reality to what he actually did, that either is or isn't, and we just don't know, because the parties have sort of arranged not to tell us, I guess, is there any light that you can Would he encourage, through his words, to have his son unite with him in the United States? But we don't, I mean, the issue in this case is, what does the word encouraged mean in the statute? So I'm struggling, and I think this was the point of the first one's question, it's a little bit peculiar for you to say, well, he encouraged, when we haven't yet decided what that means. Well, so this court in deciding, I mean, as the court stated in a previous panel decision in Sinning, which was later vacated by the Supreme Court, just because of the way in which the issues were presented, but not because of the rationale of the decision, I mean, there's no reasonable way to interpret encouraging, that does not reach a substantial amount of protected speech. Was he charged with encouraging, did the government take the position that he was encouraging, or he just walked in and said, I was encouraging? He conceded to the word encouraging under what he understood to be the plain meaning. The government didn't say, well, actually, you're actually adding and abetting and inducing as well, they didn't say any of that, they just said, okay, fine. No, the only thing in the statute is encouraging, which... It's not the only thing in the statute, see, that's what's so strange about it, unlike the statute in Stanks, and I think you know, I know something about Stanks, what it was encouraging, or was it inducing, or was it something like that? Yes, I mean, we read the statute as being... But it didn't have the adding and the abetting and everything else in it, that was in different provisions, which was a reason for taking it very seriously, the encouraging language. So in this case, he conceded only to encouraging, the immigration judge found that, agreed that he was unable to show good moral character because of the encouraging, but he conceded to encouraging only, he didn't concede to adding, abetting, assisting, inducing, and that's because encouraging has a plain meaning. Had encouraging been read to have more, as the government would like encouraging to be read, he would not have conceded that. And that's why any reasonable reading, as the court found in Sinning, of encouraging, it reaches a substantial amount of protected speech. I mean, well, suppose we were to read encouraging to mean, you know, essentially solicitation, you know, some direct connection to a specific violation of the statute. Would you still concede that he had encouraged, if that's what encouraged means? No, we would not have. And well, I mean, at this point, is there, how does it work procedurally? You're sort of stuck with the concession you've already made, right? Well, we're stuck with the concession to encouraging. I mean, so like, if it actually means, so we don't, it doesn't mean solicitation, we think, because that's a clear case where encouraging has a plain meaning. If the Congress wanted to say solicitation, they would have written solicitation. Well, what does solicitation mean that's different than encouraging in this context? I mean, he called up his son in Mexico and said, you know, I really miss you. I really want you to come over here, please come.  Or it's encouraging, is it solicitation? Saying please come would be encouraging. I mean, solicitation has a meaning of making some offer or some transaction. Like if he was, if he said, for example, if you come to the United States, I'll pay for you or I'll, like, that might be a solicitation. If there's some kind of transactional agreement, then that would be solicitation. Encouraging, by the plain meaning of the word, the way I understand the word encouraging, the way my client understands the word encouraging, can mean just speech. Like, for example, it could be a grandmother that says, I wish you would come to the United States to her son or to her grandson. It could be a non-citizen attorney who correctly advises a non-citizen that the only means to seek asylum is to come to the United States, even if that person doesn't have lawful entry documents. It could be a doctor who informs a foreign national that lifesaving treatment is only available in the United States. I mean, in the abstract, right, you're obviously right that the word encourage can be understood that way. And an ordinary speech often is understood that way. But even before we get to the canon of constitutional avoidance, we have principle of nocere sociis. And this is in a list of other things, induced, assisted, aided, and abetted, that all suggest a sort of specific direct involvement in some violation of the law. Why isn't it more reasonable to read it narrowly based on its connection with those terms than in the broader way that you're describing? Because each of those terms prescribes a separate activity. And to read out encouraging for what it actually means, what we all understand it to mean, would be to render the term superfluous. I mean, even in Williams and Justice Scalia, in the case where he was saying promote in the child pornography case, saying promote should be given a meaning with the other subsections, with the other words in the statute. He still, even in that case, said that an example of protected speech would be, I encourage you to obtain child pornography. Like, how can that be, how can that use of encourage be protected, but not a grandmother saying to the grandchild, I encourage you to join me in the United States. If the court were, I mean, and that's how I understand the word encouraging. And because it could affect all types of speech, doctor, it could affect an activist who, you know, who gives a speech to claim or support for open borders of public speech and encourages people to come to the United States. Like it affects, it affects discourse, it affects every potential, it potentially affects the speech of all non-citizens residing in the United States. And that's a substantial amount of speech and it would cause them to chill them from speaking on an issue of national importance, like immigration. Right. But I mean, that's, I don't think anyone, I mean, I guess we'll hear if the government disputes this, but I don't think there's a very serious dispute that if we read and encourage the way you're reading it, there's a significant issue under the first amendment. The question is, why should we read it so broadly? And I mean, you've mentioned the canon against making it superfluous, but I'm not sure why that requires reading it quite so expansively as you're proposing. So what is it about the statute that should lead us to conclude that encourage has this very capacious meaning that you want us to give it? Because what I mean, the word encouraging is commonly understood. And so, I mean, to say that encourage means something else, to say encourage means also some offer or some sort of act. It's no longer encouraging. And as the court found in synonyms, right, there's no way to read the word encouraging without, without acknowledging that it can be speech alone. Well, I mean, the model penal code definition has an offensive solicitation and its definition of that uses the word encourage. And I don't think anyone has ever thought that that has the kind of meaning that you're giving encourage, that you want us to give encourage here. So, you know, it's not like it would be so novel to read it more narrowly, is it? To me, we have, aside from Sidney Smith, we have at least one case which says that encourage means give people hope and so on. Yeah, yeah. So in, where it said, where it says, like, encouraging and giving its own definition, you've conspired to give hope to. And then the court in synonyms then said that. And so in your reference, go ahead. Yeah, so, I mean, encouraging should be given its plain reading because that's how we all understand it to mean if you if encouraging doesn't mean what I believe I'm a person of ordinary intelligence. But if it doesn't, if it's not meant what I understand it to mean, then you then we have a void for vagueness issue. But does it make any difference at all? I don't know if you've read the oral argument in Sidney Smith, but there was a lot of discussion of the fact that the, you know, I'm not sure I necessarily see the connection that what was being encouraged there was not a crime. Yes. Yeah, I understand you have a sort of little argument about that because he was a juvenile, but ordinarily, coming into the crossing the border is a crime. Well, I think we have an argument that it's not a crime. But also yet, I don't think so. Because in this particular instance, but that would make it a very narrow case. Right. I think still that the situation where just simple encouraging, it doesn't fall within the, it's not integral to a criminal activity. Simply encouraging someone to come to the United States is, it's not proximately tied enough to a crime or even the conduct. Like simply, it's not a distinction. No, I don't think so. I think like, for example, solicitation requires something. In this case, just because a grandmother would say, I wish you would come to the United States. That doesn't mean that the grandson is actually going to come to the United States or the grandson might come years later. It's, it's an example of protected speech and because it doesn't fall with step one, the statute is construing a statute. So speech at step two of the overbreadth. The question is, does it restrict protected speech? And the two exceptions to protected speech that the government advances are incitement. But this isn't the kind of situation that would inspire a breach of the breach of peace or violence, or there's not even necessarily a specific intent that the person committed crime. And then with regards to speech, integral to criminal criminal conduct, just words alone cannot be enough to be integral to criminal conduct. And then, well, they can sometimes. And to Brandenburg, and it can be incitement. But again, we don't know heaven and hell what happened here. So we can't tell whether it's, right. So all that was admitted to, I suppose if he was standing by the border and the guy was at the other side of the border and it was his young son, he said, you know, come right this minute. I don't know. Maybe that was him. Brandenburg. I mean, even then, I don't think that that would satisfy the Brandenburg test. That would be such imminent lawlessness. But that's the point is that this is so broad and it touches so much potential speech that it can account to doctors, attorneys, activists. And it's not rash. It's not it's not narrowly tailored enough for the government's legitimate purpose. The government has all these other ways where they can exclude people from the United States and they can do it within the statute. Through the other means. But they can't do it by penalizing such a broad swath of protected speech. May I please reserve any time? I reserve the rest of the time. Good afternoon. May it please the court. My name is Craig Newell and I'm here on behalf of the attorney general. The court should deny this petition for review because the board did not abuse its discretion in denying Mr. Marquez's request for administrative closure and its substantive constitutional challenges are without merit. As to the facial overbreath challenge under the First Amendment claim, which was the majority of Mr. Marquez's argument, what I'd like to point out to the court is that there are a number of limitations here. To prevent reading encouraged in such a broad manner as Mr. Marquez advocates. The first is this language of this inadmissibility provision itself. The the object of it is that the alien had to encourage another alien to enter or attempt to enter in violation of law. So this is a targeted speech to another particular alien to commit a criminal action, which is illegal entry or illegal re-entry. This is not a broad base to cover. Oh, I wish you remained here, which would just be a civil violation of immigration law. We are very hampered by the fact that we have no right. But yes, I understand that Mr. Marquez called his son in Mexico. I don't know if it was in Mexico. Yes. And said, you know, I really miss you. It would really make me feel a lot better if you tried to come across the border. And I encourage you. Is that you would say that that is not a First Amendment protection? You're right, you're right. Yes. The first question is whether if he just pick up the phone and said to his son, I wish you would come to United States and live here with me, that would not fall within the statute itself. He would have to encourage him to say, son, I need you to cross the border illegally and get in here no matter no matter what. That would be an example. And that would not be protected speech. He knows his son's in Mexico and he has no legal way to come. And he says come, that that wouldn't count. If if he asked him to illegally enter, which through not a port of entry, I mean, he could have told him that he knows he has no status and he knows he has no way to come legally. That's what he's asking. All right. So let's I think that's a silly answer, but let's suppose he's more specific and he says, son, I understand that you don't have any legal way to come here, but we're really missing you. And I'd really like to try and get across. Again, if you look at the statute itself, there are the fact that this word encourage is one in a list of words and to construe this word, it should be done with the words around it. There's induce, encourage, assisted, aided and abetted. Those are all language normally used for facilitation or solicitation of crimes. Your argument that it means the same thing as induced, assisted, abetted or aided and simply a reiteration, which happens occasionally, or is it that it means something else that's like induced, assisted, abetted or aided? And what is. It's it's like it's like the other ones, it is restricting the encourage from not being this open ended and encourage. I hope you come. I come. But what is it? It's not it's not literal. It's something other than the literal meaning of encourage. What is it? And what is it? What is it? It's a it's it's to persuade another person through and this is a point I haven't mentioned yet, is to persuade this one other particular alien to to commit a criminal act of illegal entry. And it needs to be done with. This is back to the Altamirano v. Gonzalez case that that case talked about this exact provision and said the plain meaning of the statute requires an affirmative act of help, assistance of encouragement. But that and so that does that mean it? Oh, I'm sorry, for some. That case dealt with whether just sitting there, right, the aiding or abetting, but it wasn't it didn't differentiate the language. And in fact, it says it needs a recurrent affirmative act of help, assistance or encouragement. But it wasn't focusing specifically on encouraging. I mean, what the affirmative act of encouragement is. Something other than language, is that what you're saying? Yet a good example of I guess there's two points, I give this example first in in Moran, the Ashcroft case that's also cited in our in our brief, that person was found inadmissible for encouraging his it was the decision focuses on the word encouraging his wife and sons to illegally enter the country. And yes, he did make aspirational statements saying, oh, I wish you would come here. But he did. He did more than that. And that felt and that was substantial evidence for encourage. He arranged for a smuggler, a payment of a smuggler through the wife's parents. And so it and on the second point, if you just view it as a I'm sorry, Judge. Well, you say your second point. OK. If it were to be just viewed as language, it's not protected speech. It is akin to solicitation. It is asking for someone to commit the crime of illegal entry or illegal reentry. But that's right. So in in sending Smith, the Solicitor General argued that it was essentially equivalent to solicitation. Is that what you're telling us here? Or do you think and I was in 1324. Do you think this statute is different or are you saying it's it's similar? And but it's similar in that manner. It is different in the manner that it more fills out. It has all these accompanying words that make this it it's a really a broad based thing. It's it's referred to as the alien smuggling and admissibility ground. So it's it's really targeting those who solicit or facilitate the illegal entry of others. And what is solicitation? I asked this here. What how does the solicitation differ from the definition of encouragement in our earlier case about giving people hope and so on? Right. And that's and that is a good point. What is the difference? I mean, we end up defining. Words. The word solicitation, for example, under the model penal code is defined with the word encourage encouraging. I mean, you think of other words like it, like persuading. I mean, even inducing is very similar to it. Maybe a little little more heavy handed than encouragement. So we are talking about words that ordinarily are pretty broad, but there are limitations here that that make it not about a substantial amount of protected speech. That's another thing that should be remembered, that this is a facial challenge and it needs to show a substantial amount of protected speech. For example, the hypotheticals given about the non-citizen attorney, if a non-citizen attorney contacts an alien in Mexico who says who tells him that this alien outside the United States says, I have this strong persecution claim, I'm afraid if that if that alien attorney here in the United States suggests to him, as in Mr. Marquez's hypothetical to show up at a poor entry and and and seek and say, I have a fear of returning and like to put forth a credible fair claim, that wouldn't be a violation of the illegal entry or the legal reentry criminal statute. That's fully consistent with the INA that you get to apply, that you can do that. And that attorney would not be would not be soliciting a crime. He would be recommending someone follow the law. Suppose he said come across the border and, you know, not in the legal entry, but as soon as you get here, you can apply for asylum. And I think you'd probably get it. What about that? You know, if the attorney says, just come over the border. I think it's the best way to do it, because right now, in fact, they're not letting anybody at the border. So you can't do it. You have to come illegally. That attorney could be putting himself in jeopardy of doing that by by encouraging someone to cross the border illegally. That is a crime. And that is classic nonprotected speech. He thought he had it. That was good legal advice because he had really a really, really strong asylum claim. The strong the good legal advice would be to show up at the at the port of entry. Right now, you know, if you're right, you don't get anywhere. I under I understand that. But here we're talking about a facial challenge and we're looking at this in the abstract and whether there's a substantial amount of protected speech being prohibited or that falls within this statute. And that's just not that's just not the case. I can go back to something you said a moment ago where you are. Maybe I misunderstood. I thought you were suggesting that to count as encouragement, you had to provide some assistance. The solicitation doesn't necessarily require assistance. So what can you clarify that? Right. Solicitation does not. And that's why. But so does the statute. I mean, I like it. So if the statute means solicitation, let me put it concretely. So if I say to somebody, you know, you're in Mexico, like, come here. If you get here by Tuesday illegally, I'll give you a job and I'm not going to help you do it. Get here on your own and I'll hire you. That seems to me would be solicitation. But I'm not getting any help. Is that covered by the statute? Right. It would be. Yes. That's so soliciting the criminal act of illegal entry. Section men's solicitation. Why do you say soliciting? It is that we're going to induce you. I mean, right. It the words and do I, I, I posit that the words induce and encourage are in many. I mean, those are words that are used as synonyms used in definitions of solicitation. So those two words are kind of your solicitation part of this. And then the assisted aid and a better are your fullest facilitation part of this. And altogether, what you have here by looking at all the words together, and that's how we should construe this. You have a a provision covering the facilitation or the solicitation of illegal entry into the United States. And so if Alta Moreno is read only to talk about the facilitation part and the affirmative act is only about that, it's still solicits. It's it's both. This is both. I have two questions. One is with regard to the overbreath of the statute. You look only at the encouragement part of the whole. In other words, one thing I was wondering is whether in determining whether there's some state. So we have this problem in seeing this because it didn't have the the the action parts were not in the same statute. But here are the action parts are in the same statute. And so in determining whether there was substantial overbreath, you look at only the word encouragement and you look at the whole statute. That's one question. Hey, I think you should look at the whole statute and not read this in isolation. That is if you look to the the Williams Supreme Court decision, that's how the Supreme Court handled. I mean, very, very open words like promote or present child pornography. But it construed it amongst the other words there. Here, Mr. Marquez has tailored his argument to just encourage. But really, this is a list of words that are broadly viewed as covering solicitation and facilitation of a legal entry. And so it's it's not it's just not covering a substantial amount of protected speech. And so that's why the First Amendment claim should be rejected. I know I know that I have limited time left. If we wait 50 seconds, 50 seconds, if it's just on the administrative closure, just just emphasize that this is an abuse of discretion review. The board looked reasonably through all the factors necessarily, and this request really was inappropriate. It was seeking to circumvent. Oh, I see you're talking about the facts, not about the custody. Yes, your honor. This this case, this decision was issued prior to Castro come and and the propriety Castro come should be looked at in a case where it was directly applied, which I know is following myself today. And I if there's no other questions, I thank you very much for your time, your honors. Thank you. In that hypothetical regarding the non-citizen attorney who said where he said the speech of having a non-citizen come to the United States, I mean, that is an acknowledgment that words alone can constitute encouragement. There was no offer by the by the non-citizen attorney in this context. And every time when when the government says encourage means need to means asked, I mean, that is not my understanding of the word encourage. My understanding of the word encourage, and I think as the Ninth Circuit notice anything is that it can be simple. It can be speech alone. It doesn't require any transactional. It's not solicitation. If the government wished to say solicitation in the statute, they would have said solicitation. With regards to Altamirano, in the cases that are analyzing the smuggling provision, the cases that found that there wasn't smuggling in Altamirano and in Thump, in those cases, there was no language. I don't think there's any doubt that Altamirano, if they were in the car and Altamirano said, get in the car, let's go. I don't think there'd be any doubt that that would be considered to be encouraging. And that's because encouraging has a plain meaning and we all know what it means. This is the other question I meant to ask Mr. Newell, but maybe not here. Is there any legislative or court case law specifically on what encouragement means in this statute? And has it been applied by the immigration courts in the way that you're suggesting at all? I mean, I couldn't find any, but that's because when a non-citizen and they write on a form, like, were you encouraging? I mean, that has the meaning that we all know what to mean. And they would concede, yes, if I said, please come to the United States, that might be encouraging. There's no offer, but under the plain meaning, that would be encouraging. That's the mystery about this case. I mean, how did the government know whether he told us, I mean, was he listening to phone calls? How does he know whether encouraging is something? I mean, one has to, I mean, frankly, presume that whenever a young person comes to join his family, he's been encouraged to do so. It's very unlikely he wasn't encouraged to do so, especially if he's fairly young as he was here. And that's the problem with the statute is that encouraging, with that language in the statute, is that encouraging penalizes clearly protected constitutional speech, especially in relation to the legitimate goal of reducing unlawful immigration. They can accomplish that goal through. But we don't seem to have any case in which anybody's been denied cancellation of removal that we know about. I mean, in some visible fashion for that reason. I mean, here, my client conceded to the plain meaning of the word. Right, but we don't know what he did. I mean, that's. I mean, maybe that's the problem. Maybe he shouldn't have conceded it. Right, right. But to say that he should have foreseen that the government that was going to be encouraging on steroids, that it was going to have some kind of like act requirement, like that's just not, that's legislating into the word encouraging another requirement. That's not part of the plan. It's this kind of question asked routinely that people say, could you encourage your son to come? And he just said yes, and that's what happened. I would. Yeah, it's on the it's on the forms that like an immigration attorney would fill out in the adjustment of status. So, for example, on I-45, which is the adjustment of status form, it says, have you ever aided, assisted, induced, vetted or encouraged? It doesn't say, have you ever taken any act and conduct to encourage? Well, I know. But if you check that off, that wouldn't do it. I mean, in other words, at that point, we have we're not focused on the word encouragement. So the only way that this would be isolated is that in some fashion, the question was directly asked, did you encourage, not did you aid, vetted, such and such, such and such. Yeah, I mean, it says that on the forms that one has to file. But it doesn't say one by one. It says the whole thing. That's the whole thing. But I mean, the or that it's in the disjunctive. I would take that to mean that it's or, so it could be encouraged or vetted. I mean, I think that's all that happened here. He just checked that. That's I think that's that's all that's before that he pleaded. I mean, that's all that he admitted was encouraging under the normal understanding of the word and remand. All right. Thank you very much. Thank you all. Thank you. All right. Thank you.
judges: Berzon, Gleason, Miller